**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ATHENS DIVISION**

| | |
|---|---|
| **DUNIA SARAHY AGUILAR, DANIA YADIRA RODRIGUEZ, *et. al.*,**<br><br>***Plaintiffs*,**<br><br>**v.**<br><br>**MARKWAYNE MULLIN, et al.,**<br><br>***Defendants*.** | **CIVIL ACTION NO.**<br>**3:26-cv-00063-TES** |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Plaintiffs both filed Form I-360—a form to self-petition pursuant to the Violence Against Women Act ("VAWA") as a battered or abused spouse—with United States Citizenship and Immigration Services ("USCIS"). [Doc. 1, p. 2]. One Plaintiff's petition has been pending for 15 months; the other, 25. [*Id.*]. Plaintiffs allege that Defendants' failure to adjudicate their claims quicker violates the Administrative Procedures Act ("APA"). [*Id.*]. On May 28, 2026, Plaintiffs filed suit, asking this Court to order USCIS to promptly adjudicate and issue decisions regarding their Form I-360 petitions. [Doc. 1, p. 21]. Specifically, Plaintiffs seek declaratory judgment under the APA declaring that Defendants are in violation of 5 U.S.C. § 555(b), 5 U.S.C. § 702, and 8 C.F.R. § 1216.5, or, in the alternative, a writ of mandamus under the Mandamus Act. [*Id.*]. They also

demand attorney's fees and other expenses under the Equal Access to Justice Act, 5 U.S.C. § 504. [*Id.*].

In response, Defendants filed a motion to dismiss Plaintiffs' complaint on July 31, 2026. [Doc. 7]. Defendants argue that this Court should dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). [*Id.*]. Plaintiffs responded to Defendants' motion with a response addressing their arguments. [Doc. 8]. Subsequently, Defendants filed a reply to Plaintiffs' response [Doc. 9] and the Court allowed Plaintiffs a surreply. [Doc. 12].

For the following reasons, this Court **GRANTS** Defendants' motion to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction and failure to state a claim. Accordingly, this Court dismisses Plaintiffs' complaint without prejudice.

## BACKGROUND

### A. Factual Background

Plaintiffs are two foreign nationals faced with the same problem. [Doc. 1, p. 2].[1] Plaintiff Aguilar is a national of Honduras, and Plaintiff Rodriguez is a national of Mexico. [*Id.* at pp. 2–3]. Both filed a Form I-360 Self-Petition for Battered/Abused Spouse of a United States Citizen: Plaintiff Aguilar on February 21, 2025, and Plaintiff Rodriguez on April 25, 2024. [*Id.*]. Both properly filed this form to escape from the

[1] Plaintiffs also include the two minor children derivatives of Plaintiff Aguilar's I-360 self-petition, identified in Plaintiffs' complaint as Plaintiffs S.B.A. and E.E.A. [*Id.* at pp. 2–3].

lasting ties of a physically abusive relationship. [*Id.* at pp. 5–8, 12]. Both submitted evidence to USCIS requesting that the agency expedite their petitions after witnessing them linger unaddressed far outside USCIS' published processing times. [*Id.* at p. 8].[2] Plaintiff Aguilar's petition has been pending for 15 months with no action while Plaintiff Rodriguez has waited 25 months for a determination. [*Id.*].

Without adjudication, Plaintiffs complain that not only are they left in the dark about their immigration status but they're also unable to adjust their status to lawful permanent residency. [*Id.* at pp. 8–9]. Plaintiffs further allege two more harms. First, because VAWA self-petitioners like Plaintiffs are interviewed about the circumstances of their marriage before any final decision is rendered, Plaintiffs allege that they are unable to fully move forward past their abusive relationships until Defendants take administrative action.[3] [*Id.* at p. 9]. And, second, because Plaintiffs' ability to renew their employment authorization documents ("EADs") depends on their petition status, Plaintiffs allege that prolonged delay creates risk that authorization will lapse before

---

[2] On December 2, 2025, and February 3, 2026, Plaintiff Aguilar also submitted inquiries to USCIS requesting prima facie determinations for her children, Plaintiffs E.E.A. and S.B.A. [*Id.*]. In order to receive public benefits in this interim period, Plaintiff's children must receive these prima facie determinations. [*Id.*].

[3] The Court has significant and strong reservations that any "harm" related to the anxiety and anguish of Plaintiffs' past abusive relationships that is prolonged by the delay in processing of their VAWA applications is sufficiently redressable as would be required to convey standing on Plaintiffs. Why? Because a favorable decision from the Court would likely only require Defendants to decide on their petitions within a designated time frame, not affirmatively grant their petitions. However, the Court needn't answer that question because, as explained below, the Court lacks subject-matter jurisdiction over any claim related to any delay in processing VAWA petitions.

renewal for employment authorization can be completed, causing irreparable harm to Plaintiffs' ability to provide for their families as single mothers. [*Id.*].

**B. <u>Statutory and Regulatory Background</u>**

**1. VAWA Self-Petitions Under the Immigration and Nationality Act**

The Immigration and Nationality Act ("INA") provides that a noncitizen who has been abused or subjected to extreme cruelty by a U.S. citizen spouse may be eligible to file a self-petition for lawful immigration status, without needing their spouse to petition for them. 8 U.S.C. § 1154(a)(1)(A)(iii) (INA § 204(a)(1)(A)(iii)). This is known as a VAWA self-petition. To successfully self-petition, one must show (a) a good faith marriage, (b) extreme battery or cruelty from the petitioner's U.S. citizen or lawful permanent resident relative, and (c) that the petitioner is a person of good moral character. *Id.*; *see also* 8 U.S.C. § 1154(a)(1)(B)(ii) (INA § 204(a)(1)(B)(ii)). If the noncitizen divorces her abusive spouse before filing the petition, she may still self-petition if she can show that the petition was filed within two years of the marriage's termination, that she formerly resided with the abusive spouse, and that there is a connection between the divorce and domestic violence. 8 U.S.C. § 1154(a)(II)(CC).

If a self-petitioner files while residing in the United States, USCIS' policy manual states that USCIS first reviews the evidence and then determines whether a prima facie case is established. [Doc. 1, p. 10]. If USCIS finds that a prima facie case has been

established, it issues a prima facie determination notice to the self-petitioner. [*Id.* at p. 11], thus establishing eligibility for certain public benefits. [*Id.*].

**2. The I-360 Adjudication Timeline Requirements Under the APA**

Plaintiffs invoke 5 U.S.C. § 555(b) and 8 C.F.R. § 1216.5 to argue that USCIS has a "statutory and regulatory duty" to adjudicate Plaintiffs' I-360 petitions within a "reasonable period of time." [*Id.* at p. 14].

Under 5 U.S.C. § 555(b), an APA provision, federal agencies are required to adjudicate pending matters "within a reasonable time." 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it . . . ."). To determine if an agency determination is made in a "reasonable time," courts often use the six "*TRAC* factors" expounded in *Telecommunications Research & Action Center v. FCC*, a D.C. Circuit opinion. *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984). Although the Eleventh Circuit "has not expressly adopted" these *TRAC* factors, *Lara Santiago v. Mayorkas*, 554 F. Supp. 3d, 1340, 1353 (N.D. Ga. 2021), district courts within the circuit often employ them. *See, e.g.*, *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1383 (M.D. Ga. 2019); *Osechas Lopez v. Mayorkas*, 649 F. Supp. 3d 1278, 1288 (S.D. Fla. 2023); *Mondragon Tinoco v. Mayorkas*, No. 1:20-CV-4787-MLB, 2021 WL 3603373, at *9 (N.D. Ga. Aug. 13, 2021); *Lara Santiago*, 554 F. Supp. 3d at 1353–54.

The six *TRAC* factors are as follows:

> (1) the time agencies take to make decisions must be governed by a "rule of reason,"; (2) where Congress has provided a timetable or other indication

> of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason[;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80 (internal citations omitted).

## LEGAL STANDARDS

### A. Defendants' Motion to Dismiss

Defendants move to dismiss on two grounds: Rule 12(b)(1) lack of subject-matter jurisdiction and Rule 12(b)(6) failure to state a claim. [Doc. 7, p. 15]; *see* Fed. R. Civ. P. 12(b)(1), (6).

A claim may proceed in federal court only if subject-matter jurisdiction exists. *Lifestar Ambulance Serv., Inc. v. United States*, 365 F.3d 1293, 1295 (11th Cir. 2004). Under Rule 12(b)(1), subject-matter jurisdiction can be challenged either facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). Facial attacks on the complaint "require[] the court to merely look and see if [the] plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1529. Therefore, on a facial attack, "a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6)

motion." *Id.* Here, Defendants bring a facial challenge to this Court's subject-matter jurisdiction to hear Plaintiffs' claims. [Doc. 7, p. 4].

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court accepts the factual allegations made in the complaint as true and construes them in the light most favorable to the non-moving party. *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

A complaint is dismissed for failure to state a claim if the facts as pled do not state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 678–79). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted). A complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheur*, 468 U.S. 183 (1984).

When considering if a court has subject-matter jurisdiction, there is a presumption in favor of judicial review. *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1306 (11th Cir. 2025). But that presumption can be overcome. *Id.* (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). The Court must consider whether it has statutory jurisdiction to act. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (stating that federal courts "possess only that power authorized by Constitution *and statute*" (emphasis added)); *see also Bender*, 475 U.S. at 541. Indeed, Congress has the power to "strip[] federal courts of jurisdiction over [certain] actions." *Patchak v. Zinke*, 583 U.S. 244, 250 (2018).

If the Court does not have subject-matter jurisdiction, then "the only function remaining to the court is that of announcing the fact and dismissing the case," because subject-matter jurisdiction is an absolute prerequisite for an action in federal court. *Ex parte McCardle*, 74 U.S. 506, 514 (1868). Any resulting dismissal for lack of subject-matter jurisdiction is not a judgment on the merits and is always entered without prejudice. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984)).

**B. The APA and Review of Agency Inaction**

The APA generally requires federal administrative agencies to address matters presented to them within a reasonable time. 5 U.S.C. §§ 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it . . . ."); *see also* 8

C.F.R. § 1216.5. It also instructs federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).[4] While the APA does not provide independent subject-matter jurisdiction, when considered alongside 28 U.S.C. § 1331, the APA does provide federal question jurisdiction over civil actions arising under the laws of the United States, including the INA. *See Perez v. USCIS*, 775 F.3d 960, 965 (11th Cir. 2014).

However, the scope of this judicial review is strictly limited. First, the APA itself limits the scope of subject-matter jurisdiction. "[Section] 706(1) [of the APA] empowers a court *only* to compel an agency to perform a ministerial or non-discretionary act, or to take action upon a matter, without directing *how* it shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (quotations omitted) (emphasis added). So, an APA claim under § 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Id.*

Second, the INA further restricts subject-matter jurisdiction. Congress specifically limited federal courts' jurisdiction to review the Secretary of Homeland Security's determinations—and the determinations of his designees—when it amended the INA in 8 U.S.C. § 1252(a)(2)(B). The language is clear: it bars federal courts from exercising federal question or mandamus jurisdiction to review "any other decision or

[4] The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

action of the . . . Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the . . . Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). The referenced subchapter includes 8 U.S.C. § 1154(a)(1)(J), governing the adjudication of a VAWA petition, which states that "[t]he determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of [the Secretary]." 8 U.S.C. § 1154(a)(1)(J).

### C. The Mandamus Act

Under the Mandamus Act, 28 U.S.C. § 1361, the district court has original jurisdiction over a mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an extraordinary remedy governed by equitable principles. *Cash v. Barnhart*, 327 F.3d 1252, 1257–58 (11th Cir. 2003). For a court to compel performance of a duty under the Mandamus Act, it must be a "clear nondiscretionary duty." *Lifestar Ambulance Serv., Inc.*, 365 F.3d at 1294.

## DISCUSSION

Defendants move to dismiss under Rules 12(b)(1)—lack of subject-matter jurisdiction—and 12(b)(6)—failure to state a clam. [Doc. 7, p. 15]. As required, the Court will first decide if it has subject-matter jurisdiction.

Without subject-matter jurisdiction over a claim, this Court cannot consider it. *Lifestar Ambulance Serv., Inc.*, 365 F.3d at 1295. So, Defendants' facial attack on subject-

matter jurisdiction becomes the threshold issue, taking the allegations in Plaintiffs' complaint as true. The Court concludes—based on the allegations in the complaint—that it does not have subject-matter jurisdiction over Plaintiffs' claims.

The APA requires federal agencies to conclude matters presented to them "within a reasonable time," 5 U.S.C. § 555(b), and, if they fail to so act, courts generally have subject-matter jurisdiction to review an agency's failure "to take a *discrete* agency action that it is *required to take*" and compel action. 5 U.S.C. § 706(1); 28 U.S.C. § 1331; *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). But review under the APA has its limits. When "statutes preclude judicial review" or "agency action is committed to agency discretion by law," it's not available. 5 U.S.C. § 701(a).

And, although the Mandamus Act, 28 U.S.C. § 1361, provides its own subject-matter jurisdiction, mandamus relief under the Act is not available unless "(1) the Plaintiffs can show a clear right to the relief sought; (2) the Defendants have a clear, nondiscretionary duty to act; and (3) no other remedy is available." *Nyaga v. Ashcroft*, 323 F.3d 906, 911 (11th Cir. 2003); *see also Lifestar Ambulance Serv., Inc.*, 365 F.3d at 1294.

In other words, for this Court to have subject-matter jurisdiction to hear Plaintiffs' claims, two things must be true. First, Defendants must have failed to perform a discrete, nondiscretionary duty to act: a requirement under both the APA

and the Mandamus Act. Second, it must be true that no other statute precludes this Court's jurisdiction to review Defendants' actions.[5]

Here, because the INA itself strips any jurisdiction this Court might have to hear the claim, the Court cannot review the agency's administrative choices. The INA precludes judicial review of USCIS' "decision[s] or action[s] . . . the authority for which is *specified* under this subchapter to be in the discretion of [the Secretary] . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added); *see also* 8 U.S.C. § 1255(a).[6] Included in that subchapter is § 1154, the provision granting discretion in the context of adjudicating VAWA self-petitions, like the Form I-360 petitions at issue in this case. 8 U.S.C. § 1154(a)(1)(J), (b). In relevant part, the provision reads as follows:

> **(a) Petitioning procedure**
>
> . . . (J) In acting on petitions filed under clause (iii) or (iv) of subparagraph (A) or clause (ii) or (iii) of subparagraph (B), or in making determinations under subparagraphs (C) and (D), the [Secretary] shall consider any credible evidence relevant to the petition. The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of [the Secretary]. . . .
>
> **(b) Investigation; consultation; approval; authorization to grant preference status**

[5] Plaintiffs aren't complaining that the Defendants haven't approved their petitions; rather, they are complaining that the Defendants haven't made *any* decision. The delay, not the actual decision, is the problem from Plaintiffs' perspective. While it is indisputable that the Defendants have not made any decisions regarding the pending petitions, the Court focuses its analysis on the portion of the INA that takes away any jurisdiction for judicial review.

[6] Because Section 1252(a)(2)(B)(ii) applies to discretionary authorities "specified under this subchapter," rather than to all discretionary acts in general, the provision must be construed as referring to "statutory, but not to regulatory, specifications." *Kucana v. Holder*, 558 U.S. 233, 237 (2010).

> After an investigation of the facts in each case, . . . the [Secretary] shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status.

*Id.*

Interpreting this provision is the Court's sole task in this case: Does it grant discretion in a way that precludes judicial review under § 1252(a)(2)(B)(ii)? The Court first turns to Eleventh Circuit precedent.

In the context of I-485 applications, the Eleventh Circuit has held—based on a different grant of discretion in a different provision, 8 U.S.C. § 1255(a)—that § 1252 bars judicial review of an agency's delay in administrating claims. *See Kanapuram*, 131 F.4th at 1306–09. However, the Eleventh Circuit expressly limited the scope of its reasoning in its *Kanapuram* opinion. *Id.* at 1308 ("We do not hold that § 1255(a)'s commitment of status adjustments to agency discretion necessarily constitutes a blanket bar on all legal challenges pursuant to § 1252(a)(2)(B)(ii)."). So, the Court can't rest on the *Kanapuram* decision alone.

The Eleventh Circuit has not directly addressed whether § 1252(a)(2)(B)(ii) also bars judicial review of I-360 delay claims. Further complicating the matter, the analysis in *Kanapruam* is not the same as the analysis needed here. The authority to review I-485

applications and I-360 petitions rests on different statutes, which have different language, including different grants of discretion to government decisionmakers. *Contrast* 8 U.S.C. § 1255(a) (granting adjustment of status power when certain conditions are met "in [the Secretary's] discretion" broadly) *with* 8 U.S.C. § 1154(a)–(b) (requiring granting discretion over "determination of what evidence is credible and the weight to be given that evidence"). Without clear guidance from the Eleventh Circuit, we turn instead to the decisions of other district courts.

As the parties have made clear, the nation's district courts do not agree on how to resolve this issue. On one hand, many courts agree with Plaintiffs. These district courts largely contend that—as Plaintiffs claim—§ 1154(b)'s use of the word "shall" imposes a mandatory, nondiscretionary duty to approve or deny a VAWA self-petition. *See, e.g.*, *Patel v. Jaddou*, No. CV 23-4021-KK-ASX, 2023 WL 9546656, at *3 (C.D. Cal. Dec. 26, 2023); *Mokuolu v. Mayorkas*, No. CV RDB-24-817, 2024 WL 4783542, at *5 (D. Md. Oct. 1, 2024); *Joshua v. Jaddou*, No. 1:24-CV-00667-JRR, 2025 WL 449001, at *6–7 (D. Md. Feb. 10, 2025); *Keethol v. Jaddou*, No. 8:24-CV-01464-JWH-DFM, 2025 WL 1373730, at *3 (C.D. Cal. Apr. 28, 2025); *Adiele v. Noem*, No. 8:24-CV-2723-CDA, 2025 WL 2659873, at *4 (D. Md. Sept. 17, 2025); *Bouksimi v. Bondi*, No. 25-CV-03899-JD, 2026 WL 743210, at *2 (N.D. Cal. Mar. 17, 2026); *see also Aina v. Mayorkas*, No. CV H-24-1006, 2024 WL 3070185, at *3 (S.D. Tex. June 20, 2024) (relying instead on a regulation to find jurisdiction to adjudicate the I-360 delay claim); *Kesireddy v. Scott*, No. 24-CV-08390, 2025 WL 3688138,

at *2 (N.D. Cal. Dec. 19, 2025) (relying on an I-485 case and a visa case to find jurisdiction to adjudicate the I-360 delay claim). Because this duty is mandatory, the reasoning goes, courts can review under the INA I-360 approval, I-360 denial, and the pace of decision-making.

On the other hand, some courts agree with Defendants. These courts—including several Eleventh Circuit district courts—reason that judicial review of an I-360 delay claim is jurisdictionally barred by § 1252(a)(2)(B)(ii) because the language in § 1154 granting sole discretion to weigh evidence necessarily implies sole discretion over the pace of that process—especially when read alongside the language in § 1154(b) granting the authority to "investigat[e]" those facts *before* reaching any mandatory decision. *See, e.g.*, *Fenyvesi v. Edlow*, No. 5:26-CV-18-TKW-MJF, 2026 WL 1702526 (N.D. Fla. May 18, 2026); *Nagy v. Edlow*, No. 8:26-CV-58-KKM-TGW, 2026 WL 1730130, at *3 (M.D. Fla. June 16, 2026); *Mokone v. U.S. Citizenship & Immigr. Servs.*, No. 4:25-CV-00566-SRC, 2026 WL 850521 (E.D. Mo. Mar. 27, 2026); *see also Alvarado v. Wolf*, No. 1:20-CV-04098-SCJ, 2021 WL 3828644, at *4–5 (N.D. Ga. Aug. 25, 2021) (distinguishing between court review of a refusal to adjudicate and the pace of adjudication in the U-visa context); *Eldeeb v. Chertoff*, 619 F. Supp. 2d 1190, 1204–08 (M.D. Fla. 2007) (finding that, in the I-485 context, although USCIS has a non-discretionary duty to *adjudicate* those petitions, the pace of that adjudication remains discretionary).

This Court finds the reasoning of its fellow Eleventh Circuit district courts most persuasive. While it is sympathetic to Plaintiffs' plight, "it is not for the Court to create its own jurisdictional review authority or to second-guess those officials entrusted with processing applications. That function was reserved for Congress by the Constitution." *Torres v. Chertoff*, No. 1:107CV01649 WSD, 2007 WL 4261742 (N.D. Ga. Nov. 30, 2007) (citation omitted). And, here, this Court finds that Congress has not granted jurisdictional review authority for two primary reasons.

First, the statute clearly grants the Secretary and his agency discretion to investigate an I-360 petition's facts and evidence in a manner the agency determines. "The Secretary must make subjective determinations such as what the bar is for a petitioner to demonstrate battery or extreme cruelty, what counts as extreme cruelty, and what weight to give evidence submitted by the petitioner." *Mokone*, 2026 WL 850521 at *3. Making these subjective determinations naturally requires a series of discretionary choices. Compelling Defendants to adjudicate Plaintiffs' petitions within a certain amount of time would not only intrude on the Secretary's discretion to make those subjective determinations in *this* case, but also in other cases. Presuming that Defendants are, in fact, still considering I-360 petitions—and Plaintiffs' complaint makes no claim to the contrary[7]—an order to adjudicate certain Plaintiffs' claims would

[7] Plaintiffs do not allege that Defendants are outright refusing to determine the facts and weigh the evidence for their I-360 petitions, or for any I-360 petitions. Plaintiffs instead claim that it is taking Defendants too long—that there is a delay in an ongoing adjudication process. *See generally* [Doc. 1].

move them up the line, at the expense of both other petitioners and of Defendants' discretionary investigatory process. Thus, this Court finds persuasive the reasoning of the district courts that failed to find subject-matter jurisdiction.

Second, the statute clearly separates any mandatory duty to decide from the discretionary investigation. There is no mandatory duty to "approve the petition" until "[a]fter an investigation of the facts." 8 U.S.C. § 1154(b). So, even if § 1154(b)'s use of the word "shall" does impose a mandatory, nondiscretionary duty to approve or deny a VAWA self-petition, that duty would only arise after the currently ongoing investigatory process is completed. Thus, this Court does not find the reasoning of the district courts that found subject-matter jurisdiction persuasive.

Because the INA strips this Court's subject-matter jurisdiction to review Defendants' administrative immigration actions in this case, it cannot review Plaintiffs' claims under the Mandamus Act, Declaratory Judgment Act, or APA. Without subject-matter jurisdiction to consider the claims, this Court does not reach analysis of the merits of Plaintiffs' claims, including analysis of Defendants' 12(b)(6) motion.

## CONCLUSION

Since this Court does not have subject-matter jurisdiction over Plaintiffs' claims, its only remaining function is to "announc[e] the fact and dismiss[] the case." *Ex parte McCardle*, 74 U.S. at 514.

Thus, for the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss. Plaintiffs' claims are dismissed without prejudice.

So ordered, this 2nd day of October, 2026.

S/ Tilman E. Self
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**